IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LORI D. McLAUGHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-CV-230 |
| | ) | |
| WILLIAM B. BARR, In His Official Capacity as United States Attorney General, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiff, Lori McLaughlin, brought this suit alleging that her supervisors at the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and others in the Department of Justice discriminated against her based on her race, age, and sex and retaliated against her for bringing previous discrimination claims, all in violation of Title VII and the ADEA. Because Ms. McLaughlin's discrimination claims are based on actions that she did not timely bring to the attention of the Equal Employment Office, her claims are time-barred, and the defendant's motion to dismiss will be granted.

## Background

For the limited purpose of resolving the motion to dismiss for failure to state a claim, the Court considers the allegations in the complaint as true. As to dates when administrative claims were made in connection with the defendant's motion to dismiss based on exhaustion, the Court accepts the allegations of the complaint, as supplemented

by attachments to Ms. McLaughlin's complaints in this case and her previous cases, along with other documents related to timing that appear to be undisputed.[1]

Ms. McLaughlin, an African-American woman, has worked for ATF since 1989. Doc. 1 at ¶¶ 3, 7. At all times relevant here, she was assigned to the Charlotte Field Division of ATF. *Id*. at ¶ 3. Ms. McLaughlin has filed multiple administrative charges against the ATF, at least two previous lawsuits, and an EEO-related whistleblower appeal. *See id.* at ¶ 75; *McLaughlin v. MSPB*, No. 19-1997 (Fed. Cir. 2019); *McLaughlin v. Barr*, No. 1:19-cv-318, 2020 WL 869914 (M.D.N.C. Feb. 21, 2019); *McLaughlin v. Sessions*, No. 1:17-cv-759-CCE-JEP (M.D.N.C. 2017); *McLaughlin v. Holder*, 828 F. Supp. 2d 230 (D.D.C. 2011); *McLaughlin v. Mukasey*, No. 1:08-cv-1256 (D.D.C. 2008).

When she filed her 2017 lawsuit in this district, No. 1:17-cv-759-CCE-JEP, Ms. McLaughlin was a criminal investigator in the Greensboro ATF office. Doc. 1 at ¶¶ 7, 9–10. On or about October 16, 2017, shortly after filing the lawsuit, Ms. McLaughlin was reassigned to the Crime Gun Intelligence Center in Charlotte. *Id*. at ¶¶ 8–10; Doc. 12-7 at 36 (Plaintiff's EEO Declaration and Exhibits). Ms. McLaughlin believed the reassignment was temporary and that she would return to her criminal investigator position in Greensboro at the conclusion of the suit. Doc. 1 at ¶¶ 10, 14.

---

[1] Courts generally do not consider matters outside the pleadings when ruling on a motion to dismiss. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc*., 367 F.3d 212, 234 (4th Cir. 2004). A court may, however, consider documents outside the pleadings without converting a motion to dismiss into one for summary judgment if those documents are "integral to and explicitly relied on in the complaint" and their authenticity is unchallenged. *Copeland v. Bieber*, 789 F.3d 484, 490 (4th Cir. 2015).

But when the suit concluded in June 2018, ATF management instead attempted to reassign Ms. McLaughlin to the National Center for Explosives Training and Research (NCETR). *Id*. at ¶¶ 14–15. On June 29, 2018, Ms. McLaughlin asked her supervisor, Wayne Dixie, why she was being reassigned, and he told her that the U.S. Attorney's Office "would not prosecute [her] cases." Doc. 12-7 at 37. Soon thereafter, ATF rescinded the reassignment. Doc. 1 at ¶ 15. In December 2018, Agent Dixie stated in a sworn declaration filed with the Merit Systems Protection Board that all three North Carolina U. S. Attorneys advised him they would not prosecute any criminal investigations conducted by Ms. McLaughlin. *Id*. at ¶ 20. Ms. McLaughlin remains at the Crime Gun Intelligence Center in Charlotte. *Id*. at ¶ 14; Doc. 12-6.

As is relevant here, Ms. McLaughlin contacted an EEO counselor on January 8, 2019. Doc. 12-1 at 2. She raised several matters with this counselor, including a complaint that the three North Carolina United States Attorneys were refusing to prosecute cases investigated by her. *Id.* at 2–3.

She filed a formal administrative complaint on March 26, 2019, alleging three adverse actions. *Id.* at 2. Specifically, Ms. McLaughlin complained that (1) the three United States Attorneys' offices in North Carolina refused to prosecute any of her criminal investigations, without notice;[2] (2) she was removed from her field position

---

[2] Ms. McLaughlin refers to this adverse action in her complaint as placement into "giglio" status, presumably a reference to *Giglio v. United States*, 405 U.S. 150, 155 (1972) (holding impeachment material of a government witness must be turned over to the defense). *See generally* Doc. 1.

3

without any official notification; and (3) she was transferred to Charlotte based on complaints filed against her by co-workers in the Greensboro office, again without notice. *Id*. at 3. Her administrative complaint was ultimately denied, and in this pending lawsuit, Ms. McLaughlin alleges that these three adverse actions were the result of race, sex, and age discrimination, as well as retaliation for an earlier lawsuit against her employer, all in violation of Title VII, 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. *See* Doc. 1 at ¶¶ 51–83.

Ms. McLaughlin alleges that ATF management and the United States Attorneys "conspired" to discriminate against her, *id.* at ¶¶ 53, 62, 69, 79, but conspiracy is not an element of a Title VII or ADEA claim nor is there a separate cause of action for conspiracy to violate those statutes. Because she proceeds *pro se*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court liberally construes her complaint to allege violations of Title VII and the ADEA, not independent conspiracy claims.

## Legal Framework

Federal employees bringing discrimination claims must exhaust administrative remedies within their federal agency before filing suit in federal court. *See* 29 C.F.R. §§ 1614.105–1614.110; *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019). The applicable regulations require federal employees to consult an Equal Employment Opportunity counselor within 45 days of the alleged discriminatory acts. 29 C.F.R. § 1614.105(a)(1). Absent grounds for equitable tolling not asserted here, *see Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 738 (E.D. Va. 2006), failure to do so is grounds for dismissing the employee's discrimination claim or disregarding acts committed before that period. At

4

the end of the counseling period, the employee has 15 days to file a discrimination charge with the agency. 29 C.F.R. §§ 1614.105(d–e), 1614.106(b). If a plaintiff has not timely exhausted her administrative remedies, her complaint is subject to dismissal when failure to exhaust is raised by the employer. *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1851–52 (2019); *Laber v. Harvey*, 438 F.3d 404, 428–29 & n.25 (4th Cir. 2006).

A Title VII federal lawsuit may include "any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the agency." *Stewart*, 912 F.3d at 705. The same is true of age discrimination claims. *See, e.g.*, *Smith v. Potomac Elec. Power Co.*, No. TDC-19-1764, 2020 WL 1904707, at *6 (D. Md. Apr. 17, 2020) (allowing an ADEA hostile workplace claim to proceed from an EEO charge that alleged age discrimination). But the Court may not consider wholly new, unrelated claims. *See Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593–94 (4th Cir. 2012) (noting that the "scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents.").

## Analysis

As is relevant here, Ms. McLaughlin made first contact with an EEO counselor on January 8, 2019. Doc. 12-1 at 2. As a result of the applicable 45-day rule, any claim based on conduct that predates November 25, 2018, is untimely.[3] 29 C.F.R. §

---

[3] Ms. McLaughlin does not specifically assert a hostile work environment claim in her complaint, but she makes a passing assertion that she "was also unlawfully harassed constituting a hostile work environment." Doc. 1 at ¶ 1. To the extent Ms. McLaughlin pursues a claim of hostile work environment, that claim is dismissed for failure to plead sufficient supporting facts.

1614.105(a)(1); *Greenblatt v. Nat'l Pork Bd.*, No. CV ELH-15-00054, 2015 WL 6549578, at *7 (D. Md. Oct. 27, 2015).

Ms. McLaughlin does not specify dates for the alleged adverse actions in either the initial EEO charge or the complaint, but the dates are apparent from exhibits, and she does not dispute them in her brief. As the EEOC held in dismissing her charges for untimeliness, Doc. 12-4 at 3, the record shows that all of the alleged adverse actions occurred before November 25, 2018.

Ms. McLaughlin alleges she was removed from her field position and transferred to Charlotte in violation of Title VII and the ADEA. But she admits that the agency reassigned her from field criminal investigator on or about October 16, 2017, Doc. 1 at ¶¶ 9–10; Doc. 12-6; Doc. 12-7 at 36, over a year before she sought EEO assistance. She also admits that she found out in June 2018 that she would not be reassigned to the Greensboro office and was told soon thereafter that she would remain at the Crime Gun Intelligence Center in Charlotte. *See* Doc. 1 at ¶ 14; Doc 12-7 at 37. The decision not to reassign Ms. McLaughlin to her field investigator position in the Greensboro office was made months before November 25, 2018. Her claims based on this conduct are untimely.

Ms. McLaughlin's remaining claim relates to the allegation that her ATF supervisors and two U.S. Attorneys discriminated against her by "conspir[ing] with one another to place [her] into a 'giglio' status." Doc. 1 at ¶¶ 53, 62, 69, 79; Doc. 12-1 at 3.[4]

---

[4] Ms. McLaughlin alleged in her EEO charge that all three North Carolina U.S. Attorneys discriminated against her. In her complaint, she is only specific as to two of the three prosecutors, though she does make references to the third in her factual allegations.

6

Ms. McLaughlin admits that on June 29, 2018, Agent Dixie informed her that "the USAO would not prosecute [her] cases." Doc. 12-7 at 37. But she did not raise this issue with the EEO office for over five months. This claim is also untimely.

Ms. McLaughlin contends that she did not become aware of the decisions by the U.S. Attorneys until December 18, 2018, when she read Agent Dixie's declaration submitted in the MSPB proceeding. Doc. 1 at ¶ 20; Doc. 17 at 15–16. As previously noted, this is inconsistent with her assertion that she was told in June that the U.S. Attorneys would not prosecute her cases. Thus, on the facts alleged, the 45-day limit was triggered no later than her June 2018 conversation with Agent Dixie.[5] Ms. McLaughlin makes no argument that her claims are subject to equitable tolling, *see generally* Doc. 17, and alleges no facts to support such tolling in her complaint. *See generally* Doc. 1.

Finally, and in any event, it is not plausible to claim that U.S. Attorneys in different districts each decided not to prosecute her cases because of age, race, and sex

---

[5] The Fourth Circuit has held in an unpublished opinion that the time limit in §1614.105(a)(1) does not begin when a complainant first learns of the alleged discrimination behind an action, but "within forty-five days of the effective date of the personnel action" itself. *Young v. Barnhart*, 52 F. App'x 191, 193 n.4 (4th Cir. 2002) (unpublished) (relying on *Hamilton v. 1st Source Bank*, 928 F.2d 86, 87–88 (4th Cir. 1990) (en banc)); *see also D'Antonio v. Napolitano*, No. 1:11-cv-1295 (AJT/TRJ), 2012 WL 1580091, at *5 (E.D. Va. May 4, 2012) (explaining *Young*). For non-personnel actions, the EEOC has adopted a "reasonable suspicion standard" as opposed to a "supportive facts" standard to determine when the 45-day time limit is triggered. *See Howard v. Dep't of the Navy*, EEOC Request No. 05970852, 1999 WL 91430, at *2 (Feb. 11, 1999). Thus, the time limitation is triggered when a complainant reasonably suspects discrimination, not necessarily when all the facts that support a charge of discrimination become apparent. *See McLoughlin v. Dep't of the Treasury*, EEOC Request No. 05A01093, 2003 WL 2010850, at *2 (Apr. 24, 2003); *see also Barkley v. Potter*, No. 06-C-0002, 2006 WL 1389113, at *2 (E.D. Wis. May 15, 2006). Under either standard, Ms. McLaughlin's claim based on a decision made before June 29, 2018 and communicated to her that day is time-barred.

7

discrimination and not because of other appropriate reasons obvious from the record. Certainly, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable," or "that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). But courts are not required to put aside reason and common sense in evaluating whether a complaint states a plausible claim for relief; in fact, a court should "draw on its experience and common sense" in making a context-specific evaluation of whether a claim is merely conceivable or rises to the level of plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009).

In the complaint, as well as in her previous paper writings, Ms. McLaughlin claims that the ATF and the Department of Justice are full of people at all levels who are and have been for many years corrupt, bigoted, or incompetent, and who have routinely disregarded and continue to disregard the rules.[6] Of course prosecutors would have doubts about her judgment as an investigator, not to mention the Pandora's box that could result should she testify. *See id*. at ¶¶ 22, 24. She does not allege discriminatory remarks

---

[6] *See, e.g.*, Doc 1 at ¶ 5 (alleging the EEO investigator failed to investigate; that the ATF "maliciously" terminated the EEO investigation in order to shield management from liability; and that no one from "DOJ/EEO, EEOC, OSC, or GAO" acted when she reported the U.S. Attorney's failure to cooperate); at ¶ 8 (alleging past "unethical conduct by DOJ attorneys" and admitting that she filed a court motion accusing DOJ attorneys of misrepresenting facts); at ¶ 10 (accusing her supervisor of making false and malicious statements in order to remove her); at ¶ 12 (alleging the Acting U.S. Attorney in one district failed to take action to remedy false conflict of interest accusations); at ¶ 29 (accusing a U.S. Attorney of basing decisions on "several unfair/bias misconduct investigations conducted by ATF"); at ¶ 36 (alleging an IAD investigator maliciously terminated a tape recording device during an interview with her); at ¶ 45 (alleging corruption at ATF and by OPRSO personnel); Doc. 12-1 at 4 (requesting prompt attention to her EEO complaint "[g]iven the ongoing corruption inside [the] EEO Office"). While these citations are only to her current complaint, she made similar allegations and claims in the complaints and briefs she filed in her previous lawsuits, of which the Court takes judicial notice.

were made to her or in her presence or any other facts that would directly support a discrimination claim, and the record establishes legitimate, non-discriminatory reasons for prosecutorial decisions that cannot plausibly be attributed to discriminatory or retaliatory motives. Ms. McLaughlin's claim that federal prosecutors discriminated against her based on her age, sex, and race is not plausible; dismissal of this claim is appropriate even if it were timely.

Ms. McLaughlin includes many other allegations of adverse actions occurring well before November 2018, including many details about events in 2011, 2013, and 2015. Doc. 1 at ¶¶ 31–45. To the extent she asserts discrimination claims based on these distant events, those claims are time-barred.

Ms. McLaughlin also alleges that she was suspended for eight days in 2019 in retaliation for "comparing the U.S. Attorneys to criminals" for placing her "in a 'giglio' status," *id.* at ¶¶ 47–50, but this conduct was not mentioned in her agency complaint presented to the EEO counselor in January 2019, was not investigated by the agency, and involved a different ATF manager. Doc. 12-1 at 3. As this claim has not gone through the necessary administrative process, it is barred for failure to exhaust administrative remedies.

Finally, to the extent she contends that the U.S. Attorneys refused to cooperate with the administrative process, that she did not receive notice of the various personnel decisions, or that the ATF terminated an EEO investigation without just cause, *see*, *e.g.*, Doc. 1 at ¶ 5, those are not adverse employment actions within the scope of Title VII or the ADEA. *Nielsen v. Hagel*, 666 F. App'x 225, 230–31 (4th Cir. 2016) (unpublished)

(holding that allegations of procedural deficiencies in the administrative process are not cognizable as "standalone" claims under Title VII); *accord Wriglesworth v. Speer*, No. 5:17-CV-252-D, 2018 WL 1950432, at *3 (E.D.N.C. Apr. 25, 2018).

In her brief, Ms. McLaughlin contends that her constitutional rights were violated in various ways. *See* Doc. 17 at 2. But these allegations are not in the complaint, and a complaint cannot be amended in a brief. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

## Conclusion

The complaint and referenced exhibits establish that Ms. McLaughlin did not timely raise her current discrimination claims with the EEO office. Her claims are untimely and will be dismissed. To the extent she raises other claims outside the scope of the relevant EEO charge, those claims will be dismissed for failure to exhaust her administrative remedies.

It is **ORDERED** that the defendant's motion to dismiss, Doc. 11, is **GRANTED**. Judgment forthcoming as time permits.

This the 23rd day of November, 2020.

                                                UNITED STATES DISTRICT JUDGE